Case number 23-3560, Evelio Lafita v. Merrick Garland. Oral argument not to exceed 15 minutes per side. Shanta Driver for the appellant. You may proceed via Zoom. Thank you. First, good morning. I would like to review the history of this case to begin with because I think that there are two violations of section 1003.23B.3 of the Immigration Act. And what that section refers to is what is required for a case to be reopened. And the statute presents different scenarios in which it's possible for a case to be reopened, which is basically what this case is about. And those two scenarios are either that there's new evidence that proves that there's a change in country conditions. And I think Mr. Lafita has more than presented evidence that backs that up. And the second prong by which a case can be reopened is if the evidence that is being relied on in the motion to reopen could not have been discovered or presented at an earlier stage in the proceedings. And I'm just, that is just a quote from the statute. And that is the second issue in this case in terms of the failure of the immigration judge and then the BIA to allow Mr. Lafita to reopen his case. So I'd like to just provide a little bit of background. Mr. Lafita came to the United States with his mother from a family of, including his mother, that were long known oppositionists to the Castro government. In 2015, Mr. Lafita was placed in jail in Michigan, in a prison. And at that point, the immigration brought, presented Mr. Lafita with an NTA notice to appear, which he signed. Ms. Driver. Yes. I'm sorry to interrupt you. Can I skip, we read the briefs and I think we're pretty familiar with the factual background. I thought you did a good job laying that out. I'm just, I want to skip to the motion to remand. Is there anything else you want to say on the law of the motion to reopen before I move ahead? No, we can move ahead. Thank you. Okay. I, and we'll go back if either of the other judges. Go ahead. I'm sorry. I'm sorry, judge. I am really sorry. The only other thing I'd like to say is that IJ knew, and it was clear from our pleadings that Mr. Lafita did not have an opportunity to present evidence at an earlier stage in his proceedings because he didn't have a lawyer. He didn't have access to any computer material. He didn't have any idea of what he was doing. And so the fact that he was for the first time able to present new evidence as of, as of his release from detention after his release from prison in 2021, that seems to me to be a clear violation of the statute and absolutely inconsistent with this court's ruling in Sene, Sene v. Gonzalez 453 F3D 383 386 6th Circuit 2006, which I'm sorry to cite a new case in this argument, but I think it's completely relevant because it makes clear that if you have no, you have a lawyer that doesn't properly represent you, then you can get your case reopened because that constitutes material that was unavailable. That, that defines that part of the statute. And it seems to me having no lawyer certainly is consistent with that. So I, I apologize, judge. That's all right. Just on the unavailability, not on presentment, on the unavailability, you agree that's unavailable to the petitioner? That is right. Okay. On the motion to remand, so I have multiple just quick questions. Did you file a motion to remand? Yes, we did in that under the BIA proceedings, if you file new evidence, it is automatically considered to be a motion to remand. Okay, that helps. Sorry, I just had to write it down. And if, assume we don't accept the motion to reopen argument just for the purposes of this question, how are the affidavits and character evidence aren't relevant to the motion to remand, right? You have to get through the gateway first of changed country conditions. That is correct. Okay. And then as to changed country conditions, isn't this different from Marquise, which you do a good job relying on in your brief, because the motion to reopen paragraph is where most of the analysis is done. And that didn't exist in Marquise, unless you tell me I missed it. And so they do a lot of analysis in the motion to reopen, and then they have the penultimate sentence in the motion to remand. That's correct, but I think that is true in this case as well. There's only a very brief reference to the remand motion in the BIA's decision. I'm sorry to interrupt you, and I apologize. But can I ask, because I asked the question poorly, in Marquise, was there a motion to reopen? And was there any analysis of that? Or was, I read the motion to remand as being exclusive to the analysis in the motion to remand, but maybe I was wrong. And I think that that is certainly what the court focused on. So I'm gonna guess that that was at least the overwhelming priority of the motion in Marquise was to get the motion to remand. Okay. Thank you for answering the questions. So if I can just continue. What I feel like is that Mr. Lafitte's due process rights have really been violated in this case. There was no reason, first of all, for him to receive his NTA in 2015. That's very, very unusual, at least in Michigan, for people to receive an NTA five or six years after, before they're going to be released from prison, because it obviously places them at a great disadvantage. And I have no idea. I mean, ICE is completely free to do whatever it wants. But I assume that part of the reason that the NTA was presented then was that it was the first opportunity to deport people to Cuba in a very long time, because Cuba had refused to take deportees back until the Cuban thaw. And so coming out of prison, again, through no fault of his own, the Omicron virus was just, it had closed down Detroit schools in January through the beginning of February 2021. And that really put him at a disadvantage. But his concern and our concern at that point was making sure that he didn't, that he would receive a stay. And the mechanism that could be used to get that was through a motion to reopen. And so that's what he filed. I can't tell you what happened to the positive equities that he presented to the court. All I know is that they disappeared. The court was open. However, it was functioning on an absolutely minimum staffing basis. So at the end of the day, he's just this guy who, who didn't win his first case because he didn't have a lawyer. And so he wasn't able to discover or submit relevant evidence. And then he comes out of detention and he has a lawyer, but everything that would ordinarily happen in a case like his- Everything in the affidavits, correct? In 2015. I get he didn't have a lawyer, but he could have submitted. And people often without lawyers do submit that information. Yeah, but in Detroit, it is not essential to submit affidavits with I-589s. That is not something that is done as a routine procedure. So yes, maybe he could have, but I'm not sure that that holds the same relevancy that it might in courts that require that those affidavits. Ms. Driver, I see your time has expired, but I have just a quick question. Mr. Lafitte has submitted, I guess I'll call it new evidence, a number of new documents when the appeal was made to the BIA. Am I correct about that? Correct. And is it your position that the BIA did not fully review or consider those documents and it was obligated to do so and that this matter should be remanded? And I guess I'm just wondering what's the strongest basis for that argument? I know the BIA's decision, it's sort of this one paragraph, doesn't say very much about all these various, I'll call them items of evidence. But your time has expired. I'm just wondering what's your strongest argument that we should remand either to the BIA or maybe should go back ultimately to the immigration judge? I think it's to give one example of a change in circumstances between 2015 and 2021. In 2021, Cuba was one of four countries on the U.S. list of state sponsors of terror, of countries that are cut off from all aid. And there were demonstrations and actions in Cuba that were anti-American and against people in Cuba who had been supporters of the United States through the revolution and into the period of the ascent of the Castro government. Okay, thank you. Thank you very much. You'll have your rebuttal. Thank you. All right. Good morning, your honors, and may it please the court. Marie Robinson for the attorney general. The board acted within its broad discretion in denying petitioner's untimely motion to reopen and his motion to remand. There's two relevant points in time here. There's March 2015 when he was ordered removed and waived appeal. And then there's February 2021 when he filed the motion to reopen. And to excuse the untimeliness of his filing, he had to present evidence of new and materially changed conditions in Cuba. And the board reasonably determined that he did not do so. The issues he's concerned about that are outlined in his documents, in his Farm Act 589, they've been ongoing. How do you distinguish this case from Marquis? So your honor, I would say that here the entire application itself is just premised on events that occurred prior to 2000, prior to his entry. The most recent event occurred in 2004 when he was in the United States. But that's looking through to the reasoning. Did you argue harmless error? You're saying insofar as the board's reasoning. Did you argue harmless error under the EPA? I'm sorry, your honor. Can you clarify your question a little bit for me? Did you argue that any error the board made in its reasoning was harmless? I don't think so, your honor. Not in our brief. No. Okay. So you agree you forfeited it? Yes, your honor. Okay. So next question is, how do you distinguish the reasoning, not the merits, in your case versus Marquis? Because that's what I'm struggling with. Okay. So your honor, I think that the facts here are worth going back to. Petitioner But explain to me how we go back to the facts, right? Marquis says the error in the reasoning, if we can't determine what they did. So look at the entirety of the BIA's opinion, which is two pages, six paragraphs, or whatever I'm guessing is to the paragraphs. How do we distinguish what Marquis said? And I've got Marquis here. I can read you the language. But I thought what they were saying is without, and I'm reading, without a real analysis by the BIA of why this evidence is immaterial, we cannot at this stage determine whether the BIA abused its discretion. What it seems to me you're saying is look through to the evidence and you can determine they didn't. I agree. That's a good argument if you argued harmless error. But it looking at their reasoning and determining under Marquis if they reviewed the evidence. Right. So your honor, I think that the thing that's important here is to consider the decision in its full context. So the board first looked at the evidence that was submitted in support of the motion to reopen and noted that the issues that the petitioner was concerned about, the human rights abuses, the harm of political opponents, that those are ongoing. And they noted that the form I-589 referenced that and that that's reflected in the documents. And then the remand evidence the board concluded was cumulative of the evidence the immigration judge already properly found insufficient to show a material change in country conditions. So petitioner could not show a likelihood of success on remand because the evidence itself simply reiterated all of the concerns and the arguments that he made in reopening. So insofar as the motion to reopen, that analysis is properly decided. The board is saying this case can't go back for the immigration judge to just look at more articles that just reiterate the exact same things that you raised in reopening. And I would just note that one of the easiest ways to see that is simply to compare the table of contents that were submitted in support of remand versus in support of reopening. Many of these articles are very similar and discuss repeatedly issues that were continuing. And that's true with both the motion to reopen and the motion to remand. And so what you're saying is different here is look at it holistically, including the motion to reopen, look at everything included, and then determine if that reasoning is sufficient. And your argument is now it is. Yes. I mean, I think that's been the argument throughout because I think one of the issues and one of the things that was somewhat confusing here is that many of the arguments in the evidence petitioner is citing in support of reopening references the remand documents. So those documents weren't before the immigration judge. And so the board, in analyzing petitioner's arguments, looked at the record itself holistically and said your form I-589 is premised on events that occurred approximately two decades ago. This is reflected in your documents. Your arguments that conditions have worsened is just not it's at odds with the record. The record shows that, frankly, hasn't been great in Cuba for opponents for decades, which is regrettable. But the question for a motion to reopen based on changed country conditions is what were conditions then when you, in March of 2015, when you were ordered removed, declined the opportunity to file an application and waived appeal? And what are conditions when you file? Do you have a reason for why you waited? What about Mr. Ivor's argument that he didn't have counsel then, so we shouldn't consider all that, and he couldn't present the affidavits in, I guess, 2021 or whenever the relevant period was because of COVID? Right. So I would say, for one thing, there is no right to counsel in immigration proceedings. And here petitioner was, this argument ignores, frankly, the facts. He was served with a initial hearing before an immigration judge in January 2015, January 27. He was given an application for asylum, but he was limited to protection under the CAT, and was then given almost two months. His next hearing was in March, March 24, 2015. He came back to court, and he said, I talked to my mother, who wrote one of the affidavits, and we can't adduce enough evidence. I'm not going to file this application. The immigration judge then confirmed and said, do you want more time? You can have another couple months. You can talk to somebody. You can decide what you want to do. And he declined that opportunity. And then he was ordered removed, and he waived appeal. Approximately six years later, he enters immigration detention, realized he is facing removal, and it's eminent, and as Ms. Driver noted, possible. And then he files this emergency motion to reopen and motion to stay based on events that happened 20 years ago. And the government submits that that's precisely the sort of scenario that the time limits and requirements are intended to avoid. Did the immigration judge rule that in connection with the motion to reopen that there were all kinds of evidence that was not before the immigration judge that we now see was submitted on appeal to the BIA, the declarations, the change, country condition evidence, the prison records, things of that nature. So what supports the BIA's statement that that new evidence is cumulative when it appears that it was never submitted before the immigration judge, if that makes sense? Yes, Your Honor, it does. And I think that what's important here to look at is what was, again, what was filed when. I don't want to sound too basic, but the table of contents at page 303 is what sort of summarizes what was filed with the motion to reopen. And so that's what was before the immigration judge. There's the 2019 Department of State Human Rights report. There's a congressional hearing regarding new policies towards Cuba from February of 2015. That's at page 344 to 419. And that, frankly, is the most contemporaneous record that I could find. And that record notes that abuses, which is the issue petitioners concerned about, have continued by Cuban authorities even after secret negotiations began with the United States and the announcement of policy change. That's 352 to 354. And then there's a 2016 announcement from President Obama about normalizing relations, which he notes is hindered by Cuba's continuing repression of its people. And then there's Congressional Research Service policy overview. There were articles about President Trump's policies and Biden deciding not to reverse them. And then there's articles about espionage, about relations with Cuba, such as they are historically. And then there's a Form I-589, in which he states he was afraid because of what happened in Cuba before he came. So that was before the immigration judge, along with his criminal and conviction records. When I read the immigration judge's decision, I read it as saying any positive equities were not argued in the motion before the court, not as this evidence was not before the immigration judge. Then the motion to remand has the Department of State reports. It has the affidavits. It has Human Rights Watch reports from 2021. There's a Freedom House report. But the thing that I noted about all of these is that they note continuing issues with human rights abuses. And then there's articles about espionage. The earliest one that I found, I believe, was from 2007. So can I ask a related question to what Judge Cole asked? Are the affidavits and character evidence relevant to the motion to reopen or the motion to remand if there's no changed country conditions? So the board did not rely on the immigration judge's finding about the lack of equities. There is a basis to deny a motion to reopen, as this court knows, even if someone is prima facie eligible based in the exercise of discretion, which the immigration judge did an alternate finding. The board didn't reach that. So we would say that's not before this court. If the case went back, then that might be something that the board would need to address. But what the board basically said is there's no changed country conditions, so the petitioner can't win. Right. That this is a continuation or it's an incremental worsening of conditions that were already present. And what we'd have to find is the board abused its discretion in making that determination. Yes, Your Honor. I see I have three more minutes. I'm welcome. Can I ask a immigration policy question, which is there used to be in a correct, you should correct me, but there used to be a policy that we didn't deport people to Cuba. I know it was a while ago. And then when relations got, this is and this is my memory, so you should correct me. You're the expert. When condition things got normalized, and Mr. Ivor will surely correct me, there were deportations. And then did they continue after that when Trump and Biden reinstituted this policy? Yes, Your Honor. So there's actually a very interesting website on ICE.gov that has statistics. They go back to 2021. And you can search by country of origin and year and also by month and by removability. So I would say that you can look at least for the last up until October of 2023 and see that removals have been occurring. To Cuba? Did they occur before 2021? Yes. Was there any point there were frozen or is my memory wrong? No, there were points where and removals, I think, operationally have often been complicated with Cuba. And the Department of State 2015 report, I believe, mentions that there was a particular point in time when removals of certain criminal non-citizens, Cuba was recalcitrant country and they were not accepting. So I believe they're still classified as a recalcitrant country, but they are taking removals. All right, if there's nothing further, thank you for your arguments. Thank you. And we'll hear from you if there is any. There is. I mean, first, yes, there was a period. But after 2016, all the way to 2021, when Cuba refused to accept returnees, the arrangement was made with Cuba after that. That is still in effect, that there'd be a special status that would be available to Cubans to be able to apply to get a visa to come to the United States. And based on that, there would be removals that would go forward. And that has become, that has continued to be a contested issue between the United States and the Cuban government. And I want to go, I want to refer to one thing that I think is not true that the government asserted, which is that I think why in Marcus, it's necessary to analyze the differences to at least provide the court with some understanding of why remand isn't appropriate, comparing the conditions in 2015 and the conditions in 2021. It's just simply not sufficient to say, well, these are continuing problems. I'll give an example. There has been massive repression of people in Syria for more than a decade. But there was a point in which it was absolutely possible to deport people back to Syria. That did not end until the last, until 2022. And so you could say, oh, well, this is just more of the same. But at certain points, quality is changed by quantity. And I think that's what the court is asking of the BIA in Marcus, show us that you consider these different factors. Don't just tell us that it's more of the same and show us if there were any attempts to correct any of these problems. And I think that that's very relevant in this case, because there are these changes that are taking place in Cuba. And the situation with the United States is very flexible and very ongoing. Second, I think that in terms of remand, whether or not Mr. Lafitte had the opportunity to bring forward his case in 2015, that is a basis for remand. That and the fact that he could not discover a lot of the evidence that he would need to use because of being in prison. So I think that in and of itself serves as a reason for remand. And I just agree with the court, these different things that were stated as being of importance in the IJ's decision, including the lack of affidavits, is cured by the time this case gets to the BIA. And those were relevant in terms of making a decision about whether or not Mr. Lafitte would face torture and persecution in Cuba. And we think that he presented new evidence to support that claim. And that's why we ask that you ask the BIA to remand this case back to the immigration court so that minimally Mr. Lafitte can have his fair, full due process day in court, which he has never had and absolutely deserves. All right. Thank you very much for your arguments and the case will be submitted.